## Commonwealth v. Bitner

*Norman M. Yoffe*, for appellant.

*Andrew Hricko* and *Elmer E. Bolla*, Deputy Attorneys General, for Commonwealth.

NEELY, J., October 19, 1959.—This matter is here on the appeal of defendant from the suspension of his

automobile dealer's registration by the Secretary of Revenue for a period of 30 days. In suspending the registration after a hearing, the secretary acted under the provisions of section 412 of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §102. The Act of April 29, 1959, P. L. 58, effective July 1, 1959, inter alia, revised The Vehicle Code, supra. The Commonwealth claims that the violations all occurred prior to the effective date of the revised statute, and therefore bottoms its contention on the 1929 Act and its amendments. In accordance with the provisions of section 412, defendant by petition prosecuted his appeal to this court. The case came on for hearing de novo on June 29, 1959, and testimony was taken. Under this section, it is our duty "to determine whether the petitioner [defendant] is subject to suspension of registration."

The Commonwealth contends that defendant's registration should be suspended because he has violated section 412(a.1), subparagraphs 3 and 5, of the amendatory Act of August 19, 1953, P. L. 1159, 75 PS §102, which read as follows:

"The secretary may suspend registrations, in the dealer's class, of any manufacturer, jobber or dealer, after a hearing before the secretary or his representative, whenever the secretary finds upon sufficient evidence: . . .

"3. The registrant has failed to give notice of transfer of ownership when and as required by this act. . . .

"5. The registrant has habitually violated any of the provisions of this act."

The Commonwealth submitted testimony concerning 11 violations of the provisions of section 412(a.1) of the act, supra. Seven of these violations involved situations where notice of the transfer of title was not given to the Secretary of Revenue within the time prescribed by the act, three instances concerned violations

regarding improper notice of encumbrances, one violation involved improper use of a temporary transfer certificate. Of these 11 violations, eight are shown to have occurred in 1957, one in 1958 and two in 1959.

Defendant has done a large volume of business in the purchase and sale of automobiles over a period of three years (1957, 1958 and 1959). We concluded at the hearing that the 11 violations shown by the Commonwealth did not tend to prove that this registrant was an habitual violator of the act, taking into consideration the extensive volume of business done by defendant. We believe this ruling at the trial was correct and we adhere thereto. This leaves for our consideration the single question as to whether or not petitioner is subject to suspension of registration because in seven instances he "has failed to give notice of transfer of ownership when and as required by this act.". . .

### Discussion

Under section 207 (c) of The Vehicle Code, 75 PS §37, in force at the time the transactions involved herein transpired, it is required that when the purchaser or transferee of a motor vehicle is a dealer who holds the same for resale, such dealer shall within 10 days from the date of the assignment of the certificate of title to said dealer notify the department upon a form prescribed and furnished by the department of the acquisition of such motor vehicle. In other instances, section 207 (b), the purchaser or transferee within 15 days after assignment of certificate of title must present to the secretary on a form furnished by the department the assigned certificate of title properly sworn to before a notary public.

The question which we must determine is whether defendant's delinquencies with respect to notice of title transfers in seven instances is sufficient to justify the suspension of the dealer's registration. There is strong indication in this record that these delinquen-

cies with respect to notice were by inadvertence. Admittedly, no fraud has been perpetrated and no individual has suffered financial loss. Considering the inadvertent nature of these delinquencies, the court should view defendant's actions with at least the same tolerance that has been exercised in comparable cases under The Vehicle Code.

We think the case should be governed by the same principles that have been applied by our courts with respect to determining the validity of the action of the Secretary of Revenue in the suspension of an individual's operating privileges under section 615.1 of The Vehicle Code, 75 PS §192.1. This court, after hearing de novo, must determine as a matter of discretion whether under all the evidence and circumstances of the case the registration should be suspended.

We think we are governed by the rule established by the Supreme Court in Handwerk Automobile License Case, 348 Pa. 263 (1944), and later decisions. In the Handwerk case, the Supreme Court, at page 265, said:

". . . In the exercise of the broad power thus conferred by the legislature, the courts are to administer justice according to the evidence and circumstances presented, . . ."

The court must take into consideration "extenuating facts and circumstances, such as, inter alia, inadvertence, emergency, unintentional or accidental violations, including, among other reasons, economic hardship": Commonwealth v. Emerick, 373 Pa. 388, 397 (1953). Of course, economic hardship alone would not in itself justify the court in setting aside the suspension of registration. In Hergert Appeal, 384 Pa. 544, 547 (1956), Mr. Justice Allen M. Stearne, with respect to section 615.1 of The Vehicle Code, supra, said: ". . . exceeding the speed limit alone might not, in the discretion of the trial judge, warrant a suspension, . . ." See also Commonwealth v. Moogerman,

385 Pa. 256,.263 (1956) ; Commonwealth v. Wagner, 364 Pa. 566, 572 (1950). Cf. Commonwealth v. Buchser, 185 Pa. Superior Ct. 54, 58 (1958).

There are circumstances here which lead us to believe that the violations would not warrant suspension of defendant's registration. Those circumstances are the minimal number of violations compared to the total volume of business done, and also the very important circumstance that the violations do not appear to have been deliberate, but on the contrary were by inadvertence. In addition thereto, there is a factor that is entitled to weight, viz., that no person has suffered loss in any of these transactions. The suspension of registration would work extreme economic hardship in this case.

We recognize that it is important to the department, and in the public interest, that the statute be complied with so that the records as to motor vehicle registrations may be accurately maintained. We are not condoning any oversight by registrants with respect to the requirement that they fulfill their duties. We do hold, however, that under all the circumstances suspension of defendant's registration is a severe penalty that should not be visited upon him in this case. This court reached substantially the same conclusion in Suspension of Dealer's Registration Plates and Cards, 57 Dauph. 429 (1946).

### Conclusion of Law

1. Although neither defendant nor the corporation gave notice as required by the provisions of The Vehicle.Code in force at the time the transactions involved herein transpired, the few violations which occurred, seven in number over a period of three years, did not justify the suspension of defendant's dealer's registration; particularly is this true since it appears that the violations were inadvertent and caused no financial loss to anyone.

In view of the foregoing, we herewith make the following

*Order*

And now, October 19, 1959, the action of the Secretary of Revenue in suspending the dealer's registration of defendant herein, Allen W. Bitner, is set aside and it is directed that defendant's registration be and the same hereby is restored.