596 A.2d 1212

**SAIA'S USED CARS, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 10, 1991.

Decided Aug. 15, 1991.

28

Harvey B. Reeder, for appellant.

Timothy P. Wile, David R. White, Asst. Counsel, for appellee.

Before PALLADINO and BYER, JJ., and BARBIERI, Senior Judge.

BYER, Judge.

Saia's Used Cars (Saia) appeals from an order of the Court of Common Pleas of Mifflin County sustaining the Department of Transportation's (DOT) suspension of Saia's dealer registration plates and authorization to issue temporary registration plates. DOT took this action because Saia submitted a motor vehicle registration document to DOT that was accompanied by an "uncollectible check." We affirm.

Saia submitted a $109.00 check payable to DOT for motor vehicle title and registration fees. Saia's bank returned the check because Saia's account had insufficient funds. DOT notified Saia that the check was "uncollectible" and the account must be settled. Five days later, Saia delivered a money order to DOT.

Because this was Saia's third offense of this nature,[1] DOT's regulations required it to conduct a hearing.[2] After a review of the evidence, DOT determined that Saia submitted an "uncollectible check" to DOT. DOT suspended Saia's dealer registration plates for six months pursuant to section 1374(a)(7) of the Vehicle Code, 75 Pa.C.S. § 1374(a)(7),[3] and 67 Pa.Code § 53.9(a)(6).[4] DOT also sus-

---

1. DOT issued a warning to Saia on March 26, 1984. For his second offense, DOT suspended Saia's dealer registration plates and authorization to issue temporary plates for one month on August 15, 1986.

2. 67 Pa.Code §§ 43.11(a), Category I(8), 53.9(a)(6).

3. 75 Pa.C.S. § 1374(a)(7) provides:

    The department may suspend or revoke registration plates for dealers ... after providing opportunity for a hearing ... when the department finds upon sufficient evidence that: ...
    (7) Any fee payable to the Commonwealth in connection with the operation of the business of the registrant has not been paid.

4. 67 Pa.Code § 53.9(a)(6) provides:

    After providing an opportunity for a hearing, the [d]epartment may impose suspensions on a registrant ... when the [d]epartment finds upon sufficient evidence that: ...

pended Saia's authorization to issue temporary registration plates for six months pursuant to 67 Pa.Code § 43.11(a), Category I(8).[5]

Saia appealed to the court of common pleas. At the *de novo* hearing, Saia provided no excuse for the insufficient fund check. Instead, Saia argued that the check could not be a lawful basis for the suspension because the check was not "uncollectible" and the money order paid the "fee payable to the Commonwealth" as required by 75 Pa.C.S. § 1374(a)(7). The trial court dismissed Saia's appeal and held that DOT's regulations defining "uncollectible checks" include checks returned for insufficient funds.[6]

■ On appeal,[7] Saia argues: (1) DOT did not meet its burden of proof to establish a suspension under 75 Pa.C.S. § 1374(a)(7) or 67 Pa.Code § 53.9(a)(6) because the code and regulation do not state that an insufficient fund check is "uncollectible;" (2) an insufficient fund check cannot be considered a "bad check" under the Crimes Code [8] because Saia promptly settled the account with DOT and paid the

(6) The registrant has submitted documents to the [d]epartment which have been accompanied by uncollectible checks drawn on the account of the registrant. . . . [The third offense imposes a suspension] [u]ntil all uncollectible checks . . . and collection charges under the Vehicle Code are paid, plus 6 months.

5. 67 Pa.Code § 43.11(a), Category I(8) provides:
   After providing an opportunity for a hearing, the [d]epartment may impose suspensions or sanctions on an issuing agent . . . when the [d]epartment finds upon sufficient evidence that: . . .
   (8) The agent has submitted documents to the [d]epartment for processing which have been accompanied by uncollectible checks drawn on the account of the agent. . . . [The third offense imposes a suspension] [u]ntil all uncollectible checks . . . and collection charges under the act are paid, plus 3 months.

6. The trial court noted that a dealer sending documents to DOT with a check later returned for insufficient funds does not pay a "fee payable to the Commonwealth" for purposes of 75 Pa.C.S. § 1374(a)(7).

7. Our scope of review is limited to determining whether the trial court's findings are supported by substantial evidence or whether the trial court committed an error of law. *Ridge AMC/Jeep/Renault, Inc. v. Commonwealth,* 103 Pa.Commonwealth Ct. 174, 520 A.2d 515, *appeal denied,* 515 Pa. 602, 528 A.2d 958 (1987).

8. Section 4105 of the Crimes Code, 18 Pa.C.S. § 4105.

fee payable to the Commonwealth; and (3) the trial court abused its discretion by not taking into account mitigating circumstances.

■ An "uncollectible check" is not defined by the Vehicle Code [9] or by DOT regulations. DOT's regulation at 67 Pa.Code § 53.9(a)(6) implements the suspension authority granted by 75 Pa.C.S. § 1374(a)(7). Saia argues that the Vehicle Code and DOT regulation do not state that an insufficient fund check is "uncollectible" and that we must strictly construe these provisions.[10] Section 1928(b) of the Statutory Construction Act, 1 Pa.C.S. § 1928(b),[11] provides that all provisions of certain classes of statutes shall be strictly construed; nevertheless, none of these classes encompasses the statute or regulations relevant to this case. However, 1 Pa.C.S. § 1928(c) provides "[a]ll other provisions of a statute shall be liberally construed to effect their objects and to promote justice." Moreover, when statutory language is not explicit, legislative intent may be ascer-

**9.** 75 Pa.C.S. § 1957 provides:
Whenever any check issued in payment of any fee or for any other purpose is returned to the department as uncollectible, the department or municipality shall charge a fee ... plus all protest fees, to the person presenting the check, to cover the cost of collection.

**10.** Saia also argues that the Commonwealth places the responsibility for payment of taxes and fees upon the purchaser of a vehicle. Nevertheless, dealers are not penalized for an "uncollectible check" written by others for title and registration work; dealers may only be suspended for checks written on their own accounts under 67 Pa.Code §§ 43.11(a), Category I(8), 53.9(a)(6). This potential liability may be avoided under 67 Pa.Code § 43.10(f) by the dealer obtaining from the buyer and sending to DOT a separate check for application fees.

**11.** 1 Pa.C.S. § 1928(b) provides:
All provisions of a statute of the classes hereafter enumerated shall be strictly construed:
(1) Penal provisions.
(2) Retroactive provisions.
(3) Provisions imposing taxes.
(4) Provisions conferring the power of eminent domain.
(5) Provisions exempting persons and property from taxation.
(6) Provisions exempting property from the power of eminent domain.
(7) Provisions decreasing the jurisdiction of a court of record.
(8) Provisions enacted finally prior to September 1, 1937 which are in derogation of the common law.

tained through administrative interpretation. 1 Pa.C.S. § 1921(c)(8).

DOT suggests the test for an "uncollectible check" is whether the check is unpaid when presented to the dealer's bank for payment. DOT analogizes [12] the term "uncollectible check" to "bad check," [13] which generally is defined as "[a] check which is dishonored on presentation for payment because of no, or insufficient, funds or closed bank account." [14] *Black's Law Dictionary* 139 (6th ed. 1990).

■ DOT interprets "uncollectible check" to include any check not paid because of insufficient funds. In *Department of Transportation v. Foxwood R.V. Center and Campground,* 119 Pa. Commonwealth Ct. 381, 547 A.2d 504 (1988), an automobile dealer submitted documents to DOT accompanied by checks that were later returned by the dealer's bank because of insufficient funds. DOT issued a warning together with a suspension of the dealer's registration privileges and authorization to issue temporary regis-

12. 67 Pa.Code § 175.51(a)(4) supports this analogy by imposing similar suspensions for a "bad check" violation in the operation of a motor vehicle inspection station. Furthermore, in *Department of Transportation v. Phil Turner's Service Centers,* 140 Pa.Commonwealth Ct. 1, 593 A.2d 442 (1991), we held that the term "bad check" is intended to encompass any check which is "uncollectible."

13. Saia asserts his check cannot be classified a "bad check" under 18 Pa.C.S. § 4105. A criminal "bad check" charge is a summary offense for purposes of 75 Pa.C.S. § 6502(b), which provides that a violation of any provision of any regulation authorized by the Vehicle Code is a summary offense. The legislature declares the requirement of culpability is generally not applicable to summary offenses. *See* 18 Pa.C.S. § 305(a). Moreover, a DOT suspension appeal is limited to a review of the order of suspension and does not extend to a review of the presence or lack of criminal culpability. *Department of Transportation v. Padilla,* 92 Pa.Commonwealth Ct. 610, 500 A.2d 503 (1985).

14. Also, section 3–507(a)(1) of the Uniform Commercial Code, 13 Pa.C.S. § 3507(a)(1), defines a negotiable instrument, like a check, as "dishonored" when presentment of the instrument is duly made and payment is refused or cannot be obtained within the prescribed time. Furthermore, 13 Pa.C.S. § 4104(a) defines "properly payable" to include "the availability of funds for payment at the time of decision to pay or dishonor [the check]." Thus, a "bad check," which is dishonored when payment is refused because of insufficient funds, cannot be deemed to pay a fee to the Commonwealth.

tration plates until reimbursed by the dealer. The dealer promptly reimbursed DOT by certified check.

Subsequently, DOT received documents from the same dealer accompanied by a check that was also returned because of insufficient funds. Although the dealer promptly reimbursed DOT, DOT imposed a one-month suspension of the dealer's registration privileges and authorization to issue temporary registration plates for the second offense. On appeal, the trial court determined that the dealer committed the violations but sustained the appeal in light of mitigating circumstances. We reversed and reinstated the suspension, noting:

> DOT may impose suspensions on a registrant for a second offense *until all uncollectible checks and other related costs are paid,* plus one month. Moreover, [s]ection 1374(a)(7) of the [Vehicle] Code provides for suspension of vehicle business registration plates upon sufficient evidence of *non-payment of any fee payable to the Commonwealth.*

*Id.,* 119 Pa.Commonwealth Ct. at 384, 547 A.2d at 505 (emphasis added).

Section 1922(5) of the Statutory Construction Act, 1 Pa.C.S. § 1922(5), provides that the legislature "intends to favor the public interest as against any private interest." This reinforces DOT's argument that its regulations allow it to identify dealers undergoing financial difficulties and to take action before larger problems arise. Such regulations provide an efficient means of ensuring prompt dealer payment of title and registration fees. DOT's interpretation serves the public interest by ensuring that fees are properly paid to the Commonwealth. An agency's interpretation of its own regulations is entitled to deference and should not be disregarded unless it is shown to be clearly erroneous or inconsistent with the regulation. *Jackson v. Pennsylvania Public Utility Commission,* 105 Pa. Commonwealth Ct. 37, 522 A.2d 1187 (1987).

The Statutory Construction Act also provides that the legislature "does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1).

Saia asserts an "uncollectible check" is any check which *cannot* be made to be paid by means of legal process. Under this interpretation, DOT would have to file suit, obtain a judgment and demonstrate that the judgment is uncollectible before a dealer's registration privileges could be suspended. Using this interpretation, DOT could not prevent a dealer from writing a plethora of "uncollectible checks" over an extended period of time. Such a result would be absurd, unreasonable and contrary to the public interest.

Finally, Saia argues that the trial court erred in failing to consider its mitigating circumstances. Saia contends that because both 75 Pa.C.S. § 1374(a) and 67 Pa.Code § 53.9(a) use the word "may," suspensions imposed under these sections are discretionary. Saia argues that the trial court abused its discretion in failing to consider the extenuating circumstances, including the small amount of the check ($109.00), the prompt settlement of the account and the harsh impact of a six-month suspension on its business.[15]

Dealer inadvertence and lack of financial loss by DOT are not elements to be considered under the relevant statutory provisions or regulations. *Foxwood.* A trial court may not reverse or modify a DOT suspension simply because it believes the result is harsh; moreover, the trial court commits abuse of discretion if it finds a punishable

---

**15.** Saia cites *Commonwealth v. Bitner,* 20 Pa.D. & C.2d 446 (C.P.York 1959) to support this position. We note that *Bitner* provides certain mitigating circumstances do not warrant the suspension of a registration; these include:

> The minimal number of violations compared to the total volume of business done, and also the very important circumstances that the violations do not appear to have been deliberate, but on the contrary were by inadvertence. In addition ... no person has suffered loss in any of these transactions. The suspension of registration would work extreme economic hardship in this case.

*Id.* at 450.

Nevertheless, *Bitner* only requires consideration of these mitigating factors and does not prohibit a suspension because of their mere presence. *See Foxwood,* 119 Pa.Commonwealth Ct. at 385 n. 1, 547 A.2d at 506 n. 1. *Bitner* was decided before the enactment of the DOT regulations relevant to this case. Moreover, our decisions filed after the enactment of these regulations address the mitigating circumstances raised by Saia.

violation yet modifies a suspension merely because it disagrees with the penalty imposed. *Department of Transportation v. Ede Motor Co.*, 107 Pa. Commonwealth Ct. 107, 527 A.2d 632 (1987).[16]  A trial court, in reviewing a DOT license suspension, is limited in its decision solely to a *de novo* determination of whether or not the person charged has indeed committed the violation for which the sanction was imposed.[17]  *Id.*

We are aware that Saia is faced with a six-month suspension that may have an adverse business impact.  However, consideration of the minimal financial impact to DOT caused by Saia's returned check and its prompt settlement is not within the discretion of the trial court.  DOT notified Saia of the relevant regulations through the previous warning and a one-month suspension.  Saia presented no excuse for this third violation and merely stated "[w]ell, it just happened.  I just overdrew my account." (41a).  We find no error of law or abuse of discretion by the trial court [18] and, therefore, affirm.

16.  The trial court in *Ede* considered the mitigating circumstances that the dealer was in business for thirty-one years and committed only four violations which caused no financial loss, were unintentional and resulted from emotional and financial strain on the dealer.

17.  The case before us is distinguishable from *Department of Transportation v. Fiore*, 138 Pa.Commonwealth Ct. 596, 588 A.2d 1332 (1991).  We held in *Fiore* that trial courts conducting *de novo* review of license suspensions may under appropriate circumstances modify the penalty imposed by DOT where there is a range of possible penalties.  The suspension in *Fiore* was under 75 Pa.C.S. § 1550, which provides a license suspension for a period not exceeding fifteen days.  In this case, 67 Pa.Code §§ 43.11(a), Category I(8), 53.9(a)(6) provide fixed suspensions and do not permit a range of penalties.

18.  The parties do not raise the question that Saia's authority to issue temporary registration plates was erroneously suspended for *six months*.  67 Pa.Code § 43.11(a), Category I(8) implements suspension authority for the issuance of temporary registration plates.  This regulation unequivocally defines the suspension for a third offense to be *three months* and implements the authority granted by 75 Pa.C.S. §§ 1310, 1331 which are silent on the period of suspension.

Nevertheless, issues not raised in the trial court are waived.  *Department of Transportation v. Searer, Jr.*, 50 Pa.Commonwealth Ct. 468, 413 A.2d 1157 (1980).  The question of the period of this suspension was not raised before DOT or the trial court; therefore, we cannot consider it *sua sponte*.

## ORDER

We affirm the order of the Court of Common Pleas of Mifflin County.